UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PROBITY INSURANCE SERVICES, INC., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED AGRICULTURAL BENEFIT TRUST, <br><br> Defendant. | Case No.: 10-CV-3500-PSG <br><br> **ORDER GRANTING-IN-PART MOTION TO DISMISS** <br><br> **(Re: Docket No. 5)** |

Defendant United Agricultural Benefit Trust's ("UABT") moves to dismiss the pending complaint pursuant to Fed. R. Civ. P. 12(b)(6). Having considered the briefs and the oral argument presented to the court, for the reasons below, the motion to dismiss is GRANTED as to Counts 1-5, with leave to amend, and the motion to dismiss is DEFERRED as to Counts 6-12.

**I. BACKGROUND**

According to the First Amended Complaint ("FAC"), Plaintiff Probity Insurance Services, Inc. ("Probity"), an insurance broker agency, and UABT, an insurer, were parties to a contract whereby Probity would solicit potential members of the United Agribusiness League for participation in UABT. Under the terms of the contract, UABT had the authority to accept or reject any proposal presented by Probity, and UABT had the right to terminate the contract upon thirty days' notice.

On either August 10, 2009 at 5:34 p.m., according to the timestamp on the email, or August 11, 2009 at 11:08 a.m., according to the FAC, UABT's Regional Vice President Alex Drollinger ("Drollinger") sent an email to Probity employee Plaintiff Bruce Hickman ("Hickman"). This email is attached as Exhibit 2 to the FAC. The "To:" field lists only Drollinger's own UABT email address. The email contains the subject line, "Health Care and the politicians. Interesting! ;) 'REMEMBER THE BOOK- ANIMAL FARM' Some animals are 'more' equal than others!!"[1] The body of the email contains a photo of President Obama sitting next to another man, who appears to be interviewing the president. According to the text of the body of the email, which is typed in all capital letters, when asked whether his family would join the new "universal health care program that the rest of us will be on," President Obama ignored the question and "a number of senators" said they would think about it. The email continues that Congress will be "100% exempt" and objects that this plan that "is good for you and I . . . is not good enough for Obama, his family or Congress . . .??" "Personally, I can only accept a universal health care overhaul that extends to everyone . . . not just us lowly citizens . . . While the Washington 'elite' keep right on with their gold-plated health care coverages."

Hickman, an African-American, replied to Drollinger on August 11, 2009 at 11:08 a.m. with a single sentence: "If you ever send me another email you will be dealt with severely." UABT subsequently terminated the contract with Probity. Although UABT initially explained that the termination was necessary because Probity had failed to attend "producer school" and generate sufficient "quoting activity, " UABT eventually explained to Probity that it had terminated Probity because Hickman's email in response to Drollinger's broadcast email had been irate, abusive, and threatening. Probity and Hickman brought this lawsuit alleging violations of 42 U.S.C. §1981 as well as a number of state law claims.

---

[1] 9/2/10 FAC (Docket No. 4) ("FAC") Ex. 2.

## II. LEGAL STANDARDS

**A. RULE 12(B)(6)**

Pursuant to Rule 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[2] While "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[3] In other words, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."[4] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[6] Review of a motion to dismiss is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[7] The court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[8] Further, the court need not accept as true allegations that contradict matters that are either subject to judicial notice or attached as exhibits to the complaint.[9]

---

[2] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

[3] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[4] *Id*. at 1940 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id*. at 1940.

[6] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir.2008).

[7] *See id*. at 1061.

[8] *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994).

[9] *See In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir.2008).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[10] If dismissing with prejudice, a district court's failure to consider the factors relevant to whether amendment should be permitted and failure to articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion.[11]

**B.  42 U.S.C. § 1981**

Section 1981 "protects the equal right of all persons to make and enforce contracts without respect to race and defines 'make and enforce contracts' to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits of the contractual relationship."[12] In order to establish a claim under section 1981, a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.).[13] Additionally, a plaintiff cannot state a section 1981 claim unless he has rights under the existing contract that he wishes to make and enforce.[14]

### III. DISCUSSION

**A.  COUNT 1: INTERFERENCE WITH THE EMPLOYMENT CONTRACT BETWEEN HICKMAN AND PROBITY**

In the first count, Hickman alleges that UABT violated section 1981 by "intentionally interfer[ring] with Hickman's employment contract with Probity by sending Hickman a racist

---

[10] *Eminence Capital, LLC v. Aspeon, Inc*., 316 F. 3d 1048, 1052 (9th Cir. 2003).

[11] *See id.* at 1052.

[12] *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 475 (2006) (omitting internal citations).

[13] *Peterson v. State of California Dept. of Corr. & Rehab*., 451 F. Supp. 2d 1092, 1101 (E.D. Cal. 2006) (citing *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2nd Cir.1993)).

[14] *Domino's Pizza, Inc.,* 546 U.S. at 476.

email at his place of employment because of Hickman's African-American race and thereby rendering him unable to perform his duties and responsibilities for a period of time."

In support of his conclusion that the email was racially discriminatory, Hickman alleges that the email implies "[President] Obama, a black politician, was 'less' equal than his white counterparts."[15] Hickman further argues in his opposition that the email implies that African-Americans are animals and inferior to other races because the subject line, "Health Care and the politicians. Interesting! ;) 'REMEMBER THE BOOK – ANIMAL FARM' Some animals were 'more' equal than others!!" is followed by a photograph of President Obama being interviewed by a white man.[16]

The email, which is attached to the complaint, directly contradicts these factual allegations. Everything in the email criticizes politicians as a class, without reference to race. The email does not mention race generally or African-Americans specifically. Hickman alleges the email *implicitly* mentions race because it involves President Obama, who is African-American. The email, however, does not make any comparison between President Obama and white politicians, let alone a comparison on the basis of race. To the contrary, the email lumps President Obama and Congress together (which includes both non-African-Americans and African-American members) as the "Washington elite" and compares them to "lowly" non-politicians.[17]

The content of the email thus directly contradicts Hickman's allegations that the email implies that President Obama is *less* equal than non-African-American politicians or implies by

---

[15] FAC ¶ 35.

[16] 10/07/10 Pl.'s Opp'n to Def.'s Mot. Dismiss at 5:1-2 (Docket No. 10).

[17] Furthermore, the subject line clearly states that it is a reference to the novel Animal Farm by George Orwell, which describes a utopian animal society that is destroyed by its leadership's corruption and greed. Over the course of the novel, the commandment "all animals are equal" is transformed to "all animals are equal, but some animals are more equal" to justify the leadership's excess. Even without having any knowledge of the plot of Animal Farm or the significance of the phrase "some animals are more equal," because the email criticizes both the President and Congress for being "elite" and using "gold-plated" healthcare coverage, the only reasonable inference is that the "more equal animals" referenced in the subject line are meant to be all politicians — regardless of their race.

extension that all African-Americans are inferior. Hickman has not alleged any other facts in the FAC that would support his claim that Drollinger's email to Hickman constituted intentional discrimination on the basis of race.[18]

In sum, Hickman failed to plead facts that would allow the court to draw the reasonable inference that the UABT is liable for the violations of section 1981 alleged in Count 1. The first count therefore is DISMISSED with leave to amend.

**B. COUNT 2: TERMINATION OF THE CONTRACT BETWEEN UABT AND PROBITY**

In the second count, Hickman alleges that in violation of section 1981 UABT terminated its contract with Probity in retaliation for Hickman's objection to receipt of what he deemed racist literature and his demand that no further racist information be sent.

"A plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.' Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's."[19]

Hickman was not a party to the contract between UABT and Probity. Hickman argues that UABT's termination following his email shows that Hickman had the right to make and enforce the contract. That alone, however, is not enough to give Hickman standing. The Supreme Court's ruling in *Domino's Pizza, Inc. v. McDonald*[20] is directly on point. McDonald, the sole shareholder of a company that entered into several contracts with Domino's, argued that he had standing because he made and enforced contracts for his company. The Supreme Court disagreed, explaining that "the right to 'make contracts' guaranteed by the statute was not the insignificant right to act as an agent for someone else's contracting . . . . Rather, it was the right . . . to give and

---

[18] In his declaration, Hickman states that he had never before received an email from Drollinger and that Drollinger knew Hickman was African-American. These additional facts, however, are not alleged in the FAC.

[19] *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006).

[20] *Id.* at 475.

6
Case No.: 10-3500
ORDER

receive contractual rights on one's own behalf."[21] Hickman has not alleged that he had the right to give or to receive contractual rights on his own behalf under the contract between UABT and Probity. As a result, Hickman has not demonstrated that he has standing to bring a section 1981 claim for the termination of the UABT/Probity contract. The second count, therefore, is DISMISSED with leave to amend.

**C. COUNTS 3 AND 5: RETALIATORY TERMINATION OF THE CONTRACT BETWEEN UABT AND PROBITY**

In the third count, Probity alleges that UABT terminated its contract with Probity "due to Hickman's, an African-American, objections to the racist email and that UABT deemed an African-American to be acting 'inappropriate and unprofessional' in objecting to such email. . . . [and] that in view of Hickman's objection, Probity 'did not share or tolerate UABT's ideological view.'"[22] The fifth count states substantially the same claim that UABT retaliated against Probity by terminating the contract because of Hickman's objection to receipt of what he deemed racist literature and demand that no further racist information be directed to him by UABT.

Section 1981 does not include an express retaliation provision, but the Ninth Circuit has concluded that section 1981 encompasses retaliation claims.[23] A section 1981 retaliation claim is analyzed under the framework of a claim for retaliation under Title VII.[24] "To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."[25]

UABT argues that Probity has failed to plead facts to state that Hickman was engaging in a protected activity when he replied to Drollinger's email. Section 1981 prohibits employers from

---

[21] *Id.* at 475.

[22] FAC ¶ 48.

[23] *See Manatt v. Bank of America*, 339 F.3d 792, 795 (9th Cir. 2003).

[24] *Id.* at 801.

[25] *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)

discriminating against an employee because that employee has opposed any practice that the employee reasonably believes is unlawful under those provisions.[26]  Put another way, in order to state a claim of retaliation, Probity must allege facts that show that Hickman's email complained of conduct that Hickman reasonably believed was forbidden under Section 1981.  For the same reasons this court dismissed count one, it was not reasonable for Hickman to believe that the email from Drollinger constituted intentional race discrimination.[27]

In addition, the plaintiff must state facts sufficient to infer that the defendant was aware that the plaintiff had engaged in protected activity.[28]  Hickman replied to Drollinger's email with the following sentence: "If you ever send me another email you will be dealt with severely."  Probity argues that Drollinger understood Hickman's email as an objection to the racially discriminatory content of Drollinger's email because Drollinger had written the offending email.  As discussed above, the email criticizes a plan for universal health care; it does not draw any comparisons based on race or mention race.  The content of the email alone cannot reasonably be construed to be racially discriminatory.  Thus, Probity has not stated any facts about the content of Hickman's email or its context that could give rise to a reasonable inference that UABT was aware that Hickman was objecting to racial discrimination.[29]

Probity has not alleged facts sufficient to state a plausible claim that UABT terminated the contract in retaliation for a protected activity, in violation of § 1981.  Counts 3 and 5 therefore are DISMISSED with leave to amend.

---

[26] *Lockett v. Bayer Healthcare*, C 05-03978 CRB, 2008 WL 624847, at *7 (N.D. Cal. Mar. 3, 2008) (citing *Freitag v. Ayers,* 468 F.3d 528, 541 (9th Cir.2006)).

[27] *Cf. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (holding that no reasonable person could have believed that the single incident recounted by the plaintiff violated Title VII's standard).

[28] *Raad v. Fairbanks N. Star Borough Sch. Dist*., 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003).

[29] *Cf. Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 560 (D. Kan. 1995) (applying the same retaliation framework to and ADEA claim and finding that "[e]mployers need not approach every employee's comment as a riddle, puzzling over the possibility that it contains a cloaked complaint of discrimination.").

### D. COUNT 4: INTERFERENCE WITH THE EMPLOYMENT CONTRACT BETWEEN HICKMAN AND PROBITY

In the fourth count, Probity similarly alleges that UABT "intentionally interfered with Probity's employment contract with its employee Hickman, an African-American, by sending directly to employee Hickman unsolicited emails without permission or approval . . . . UABT sent the email of Exhibit 2 to Hickman to intentionally cause Hickman emotional distress and thereby interfere with Hickman' s ability to perform his employment duties."

Section 1981 redresses only intentional discrimination based on race.[30]  Count 4 does not allege any racial discrimination; it alleges merely that UABT sent unsolicited emails to Hickman. Count 4 therefore is DISMISSED with leave to amend.

### E. COUNTS 6-12: SUPPLEMENTAL JURISDICTION

The Section 1981 claims provide the sole basis for federal subject matter jurisdiction. While federal courts may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution,"[31] a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction."[32]  Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims."[33]  Because it is not yet clear that Probity and Hickman can state a viable section 1981 claim, the court will DEFER its review of the remaining state-law claims.

---

[30] *Lowe v. City of Monrovia,* 775 F.2d 998, 1010 n. 10 (9th Cir.1985).

[31] 28 U.S.C. § 1367(a),

[32] *Id.* § 1367(c)(3).

[33] *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.").

9

Case No.: 10-3500
ORDER

## IV. CONCLUSION

For the foregoing reasons, UABT's motion to dismiss is granted, with leave to amend in a manner consistent with this order. Any amended complaint shall be filed no later than June 17, 2011.

**IT IS SO ORDERED.**

Dated: May 20, 2011

PAUL S. GREWAL
United States Magistrate Judge